that I just paid to have repaired is still losing time, so it was off by several minutes. I know you were all on tenderhooks the whole time. I want to welcome you here to the court this morning. We have a traffic light system that you may be familiar with, but I'll remind you, the yellow light means you have two minutes left in your argument. When the red light comes on, we ask you to conclude unless you're answering the court's questions. We also very much appreciate record citations when those are appropriate. We have read the briefs and the record excerpts. We have not generally gotten into the entire record before oral argument. The first case of the morning is number 17-30949BP v. Claimant ID number 100094497. Sounds like a tax ID number. Mr. Jones. Has Mr. Clark ever been confirmed? I believe he has not been confirmed. His nomination, as far as I know, remains pending. All right. Just wondered that his name is still on the brief here. May it please the court, I'm Stanton Jones, and I represent BP. I'd like to reserve five minutes of my time this morning for rebuttal. The district court abused its discretion by denying review in this case for two reasons. First, appeal panels are split on the proper methodology for classifying claimants' expenses as either fixed or variable. The two distinct approaches followed by different appeal panels have led to inconsistent results. And absent this court's intervention, this issue will continue to recur with many other claimants involving millions of dollars in total and will lead to further inconsistent results. Isn't that a lot of fact-based questions or issues that have to be decided in working out the terms of the settlement agreement? I mean, we are dealing with a settlement agreement, and we have a procedure for doing that. And at each level, it's pretty much fact-based. So I'm not so sure that we'd be concerned about a split since it's so fact-driven. Respectfully, Your Honor, the question in this appeal and the issue, specific issue on which the appeal panels are split here, is a purely legal issue. It is a legal issue of under the settlement agreement's terms, what is the proper methodology? Not the proper outcome based on the facts of any case, but what is the proper methodology for the settlement program to classify a claimant's expenses as either fixed or variable? That's a legal question. Some appeal panels— Well, but each business is different. I mean, here we're dealing with sort of a shrimp middleman, and I just think it's very fact-driven. I know we've got terminology. I know we've got this exhibit 4D that describes what's fixed and what's variable. But when you get down to it, BP agreed on a settlement agreement, and now these—the initial round is worked out, and then they've got an appeals panel to look at it.  Your Honor, in any given case, the question of whether a particular expense is in fact fixed or variable will be a fact question. But the overriding question and the question that's presented in this appeal is at a higher level, and it's a legal question. What is the methodology for determining whether the expense is fixed or variable? Should the settlement program and the settlement program accountants exercise independent judgment to evaluate the true underlying nature of the expense to classify it in accordance with economic reality as either fixed or variable? Or alternatively, as some appeal panels have held, should the settlement program and its accountants cast aside economic reality and simply engage in a mechanical process of matching up talismanic words? Well, I have accountants if all they're supposed to do is accept the self-interested judgment of the claimant. There wouldn't be any purpose to it at all, Your Honor. A child could do—could follow the process that the claimant is suggesting in this case. It's just a question of matching up the word supplies on a claimant's P&Ls with the word supplies on Exhibit 4D. We wouldn't need PricewaterhouseCoopers accountants and a small army of PricewaterhouseCoopers accountants undertaking this process were the claimants approach the correct one. But this Court has, in fact, heard several cases that involve interpretation of the terms of the settlement agreement, hasn't it? It has, indeed. I mean, I know a big one was the BEL, you know, the scope of the BEL provisions. Correct, Your Honor. And in general, I would say that the Court's decision reflect that the approach to calculating compensation awards under this settlement agreement should accord with economic reality. It should not be based on— Whose economic reality? The economic reality in real life. You look at these— Whose real life? I mean, you're just dealing in semantics here, counsel. It's fact-driven. It's discretionary review by the district court. BP agreed on this settlement procedure, and now it's trying to avoid it in this instance. Your Honor, the facts here are undisputed. The facts are that we have an expense category that was labeled on the claimant's P&Ls using the word supplies. The settlement program accountants asked the claimant a straightforward question. What were those expenses for? And the claimant promptly produced a spreadsheet that listed every single expense, indicating what it was for, who the vendor was, what the dollar— Like a lot of them were the styrofoam boxes that they put the shrimp in to deliver it to wherever it was going, right? Yes, that's exactly what I— And the amount of destinations. When did they purchase the boxes? I don't recall offhand whether the spreadsheet lists the dates. Well, that would make a difference, wouldn't it, if each year they said, you know, we're going to purchase a million dollars' worth of styrofoam boxes and we use what we need? I mean, as I recall, there's some instance here where one problem the appeals counsel had was, well, they're on a . . . you're doing a cash basis and they're on an approval basis or this and the other. It just . . . it gets real murky and it's way, way down deep that the district court didn't feel needed review by the district judge. And it's discretionary review by that judge. If discretion is going to mean anything, it's discretionary review. Respectfully, Your Honor, I don't think it's necessary to go deep. I don't think it's necessary to go deep at all. These are classic, quintessential—I mean, this is economics pre-101. Well, maybe to you. I don't know what your background is. You're up here as a lawyer. I'll put it this way. The bags, the boxes, the plastic wrap that a shrimp processor uses to process, package, and sell shrimp is a variable expense. There's no dispute about that in this case. There is no factual dispute about that. Their basic argument is that there were some of those things that are apparently under this agreement. Some of these variable items may be classified as fixed, right? I mean, it's not just that they have the unilateral right to classify them. It's also that there was some kind of division that was possible because, after all, BP suggested a 50-50 split, right? Yes, that's right. Exhibit 4C to the settlement agreement directs the settlement program to classify a claimant's expenses as either fixed or variable. This is an essential, central part of the calculation of every compensation award under this business economic loss framework. Exhibit 4D, in turn, reflects the parties' agreement on a baseline, a common understanding of types of expenses that are fixed and types of expenses that are variable. It's a very reasonable list that I think anyone who studied economics, any accountant, could follow, but nothing in Exhibit 4C or 4D indicates. Mr. Jones, how would you articulate with precision the desired holding? The desired holding is that, under Exhibits 4C and 4D, the settlement program should classify a claimant's expenses as either fixed or variable based on the true underlying nature of those expenses. The settlement program and its accountants, its highly qualified, trained, expert accountants from Price Waterhouse, should exercise independent judgment to evaluate what the claimant's expenses actually are and whether they are, in fact, in reality, in economic reality, fixed or variable. The settlement program should not do what the appeal panel ruled in this case and what the claimant is advocating. When you say by its true nature, flush that out for me. Sure. It says here, this list. Exhibit 4, that's Exhibit 4D that you're holding up, and that is the list. Attachment A is what I'm holding up. Oh, sorry, on the page before that, it says Exhibit 4D. That's Attachment A to Exhibit 4D. Exhibit A is a pretty definitive list of fixed and variable costs. It is, and if you look under variable costs, it lists consumable goods. It also lists, it says COGS variable. That's costs of goods sold variable. These will be extremely commonplace, routine terms used by any accountant or economist. This is incredibly straightforward, and again, there is no dispute in this case about whether the expenses we're talking about, the bags, the boxes, the carbon dioxide that you use to freeze the shrimp is a variable expense. It would qualify as consumable goods as well as COGS, cost of goods sold, variable. In other words, if they were filing a tax return, they could not capitalize and amortize this cost or show depreciation on it over a period of time. Indeed, Your Honor, and that's for a straightforward reason. If you don't have any shrimp, you don't need any bags or boxes or labels. You don't need any carbon dioxide to freeze shrimp if you don't have any shrimp. By contrast, if you have a lot of shrimp, if you have more shrimp, you are going to need more bags, boxes, labels. The question I had about your argument was why we need to rule on whether the district court abuses discretion or not because, as I understand it, what we're being, at least my interpretation, is what we're being asked to interpret the application of the plan here. The court has done it in the past. Whether we agree or disagree with what the district court did, we still have to interpret the plan. Yes, Your Honor. I think that the court should interpret the settlement agreement, can interpret the settlement agreement. But I'm a little less clear on whether we ought to, say, try to identify any standards for when the district court should intervene or not because there may be the fact that appeals panels disagree might or might not, you know, require the district court's intervention. So this Court in previous decisions has held that under this settlement agreement, the district court, Judge Barbier, does abuse its discretion by denying discretionary review in two circumstances. One is when there's a split among appeal panels on a recurring issue. What case was that? I'll get you the citation for it. It's BP v. Clement and then some very long tax ID number sounding. What's the cite to it? I'll give you the cite to it if you give me four seconds. This citation is 848, Fed 3rd, 407. The pin cite is 410. And it says that the district court can abuse its discretion if a case, quote, raises a recurring issue on which appeal panels are split, and the resolution of the question will substantially impact the administration. But in that case, they affirmed the denial of discretionary review. Our court did. Yes. In that case, I suppose the determination was that there was no appeal panel split. Here, there is a clear appeal panel split. Now, I want to ask you about you've only got a little time left. On fixed costs, one of the fixed costs is supplies. Didn't that come into play here? Yes. So that was central to the outcome here. Right. Exactly. It's fixed costs, and supplies are listed as fixed costs. And I suppose you could make the same argument. Well, we don't know how much supplies we're going to use each month, so that's variable. I mean, somebody, y'all agreed, y'all being BP, that supplies would be under fixed costs. These are variable costs. There's no accountant, there's no economist who would say that the bags, the boxes, and the carbon dioxide that a shrimp processor uses— You've got some proof of that? No economist in the world that would say that? I would bet my bottom dollar on it. Okay. I mean, the proof is in the pudding. In this case, the settlement program accountants from PricewaterhouseCoopers took a square look at what these expenses were for, the bags, the boxes, et cetera, and they said those are classic variable expenses. And so despite the fact that the claimants' P&Ls used the word supplies, and the word supplies is under Exhibit 4D's list of fixed costs, the settlement program said that that talismanic words approach would not accord with reality. It wouldn't accord with the reality of what these expenses are.  So that this claimant's compensation award can be based on economic reality, not some fiction or talismanic words approach. I'll reserve the rest of my time for rebuttal. All right. Thank you, sir. Next we have Mr. Burwell. Good morning. May it please the Court. This Court should find the district court that did not abuse its discretion and affirm the district court's denial of discretionary review for two reasons. One, the appeals panels are not split on the issue of how to review the categorization of supply expense under the settlement agreement. And two, the appeal panel did not misapply the settlement agreement by making a factual determination that Texas Gulf's supply expenses best conform to fixed supply expense rather than variable cost of goods sold. It's important to remember in this standard review of the district court's discretion that this is not a mandatory review. It's not feasible for the district court to act as the arbiter of every case. It only should be conducted in rare and exceptional circumstances. The appeal panels are not split on the issue of how to categorize supply expense. And what's interesting is what we did not hear about is there is an exact directive on how . . . How is this a fixed expense? What exactly are you saying are the supplies that are fixed expenses? So, Judge, these are fixed expenses because these are expenses that are purchased by the company. They are . . . Tell me what they are. You admit . . . Cleaning supplies, welding supplies, hardware, office supplies, those types of things. They were provided to the claims administrator . . . So, this shrimper . . . So, this shrimper whose main . . . I mean, this middleman, his main business is to package up shrimp. And you're saying that the overwhelming amount of fixed costs in this business consists of paper for his fax machine and cleaning supplies. I don't know what you weld when you're just taking shrimp off the boat and packaging them to resale, but I'll grant you some of that. And you're saying that is so overwhelming here. Where did your client classify the boxes and the labels and the CO2? That . . . The first . . . There's kind of two questions that you had there, Your Honor. First of all, the majority of the expenses in this case were not fixed supply expenses. That was just a small part. And what happened was the claims administrator asked for clarification as to what those were. They were provided with a spreadsheet that went through by vendor and by type of what all those expenses were. The claims administrator said, wow, these look like consumables, so we're going to change them under Policy 361, Version 5, which is the directive that they have in this. So, there's no . . . I'll come back to that. We're going to change them to variable consumables. In the appeal, it was pointed out, based upon an analysis on that spreadsheet . . . And just let me interrupt one little bit, because the administrator offered a 50-50 split on this item, did he not? That was in a prior part of the proceeding as it came through to the . . . I understand the BEL formula changed, but I don't think the split on this would have been affected by the BEL calculation. Originally, it was 50-50, and then it went all to variable. Okay. And so, in the appeal, the appeal . . . It was pointed out to the appeal panel that an analysis of all those vendors and all those things . . . In certain years, it was 30 percent. In other years, it was 45 percent, these consumables. But that the majority of the supply expense were the fixed items, the cleaning expenses, the . . . That's where your client took the position. Yes. Okay. And the appeal panel reviewed that information de novo and made a factual determination that, based upon the information in front of the claims administrator, that those category of expenses best fit the category of supply expense. The other thing he looked at, too, was contemporaneously, long before the settlement ever happened, Texas Gulf listed those expenses on their P&Ls as fixed supply expenses, and they deducted them from their taxes. Now, again, you say these . . . Well, anything you use in your business can be deducted as a business expense. That's irrelevant. The difference is whether it is considered a fixed cost, which is sort of analogous to capitalize and depreciate, versus a variable cost, and you can't monkey around with that division for IRS purposes. Correct. But let me . . . Texas Gulf had tons of variable expenses that they did not deduct. This is just one small part. Well, it's either worth $1.5 million or $2.5 million on the settlement, so that's not that small. But you just . . . I'm a little confused because you said a while ago the majority of expenses were not fixed supplies, and that . . . So in what you're classifying, in this small part that we're talking about, they say that includes the bags, the boxes, the labels, and the CO2. Is that correct or not correct? It does. That supply expense category that was contemporarily expensed as fixed costs on their tax returns does include, in some years, 31 percent, another year, 45 percent consumables. The remainder is fixed costs. And the problem that you have here as the appeal panel is looking at this is they're looking at this in this baseball process. They look at it de novo. They make a factual determination of where these expenses lie, and then they look at the two proposals from each company. And in this case, they found that the proposal by Texas Gulf fit better, was the best thing. What happened was BP put zero as fixed costs in their proposal. They went all in like Texas hold them, and now they've lost. And the appeal panel can only remand these in very specific instances, and those are when there's a new document that comes forward or when there's not enough information on the record to be sufficient to support either party's final proposal. And in this case, the appeal panel made a factual determination that Texas Gulf's categorization of those expenses best conformed to supply expenses. Well, let me ask you a question. Is this exhibit, tab 5 in the record excerpts, Notice of Appeal Panel Decision December 22, 2016, is that the one we're dealing with? I'm sorry, can you give me the number again? Appeals tab 5 in the record excerpts, and it's Appeals Panel Decision December 22, 2016. Is that the second decision? I can go get that. There's a number right here on the right side that tells you, that identifies all these, and then I have them. Page 1384. I don't know what you're talking about. I'm sorry. 217- It ain't here. I don't have that number. Okay, let me get it. I'm sorry. It's record. It was in BP's record excerpt. So I suppose it's the final. Is this the final decision, counsel? Are you talking about in our case? Yes, sir. Oh, I'm sorry. In our case, I have that right here. Yeah, okay. I thought you meant on another appeal. I'm sorry. My bad. Yeah.  Your question, ma'am? It says, Claimant has appealed a reconsidered BEL award on the basis the claims administrator ignored its contemporaneous records of monthly purchases in calculating the cost of goods sold. And then it goes on, blah, blah, blah. Claimant assails the claimant accurately. And this is about halfway down, second page, second paragraph. Claimant accurately asserts that the rationale of variable expenses being proportional to revenue has been found by countless past panel opinions not to be a valid consideration in reclassification of an expense otherwise listed as fixed. BP's response is to essentially justify that result by citing the same common law decision, God forbid, concerning variable expenses. Anyway, so what I took this language to mean is that we, the appeals panel, have a different view of fixed and variable expenses than what accountants do, than what is currently understood in business and elementary economics, and perhaps what is not what is understood in this attachment A. I would disagree. I have a different reading of that, Your Honor. What my reading of what they're saying there is, just because expenses go up and down with revenue does not exactly mean that they are variable. And what's important is in this case, it's clear on the record that even though there are some boxes and wrappers in those amounts, those expenses do not go up and down with revenue. They don't track revenue at all. And so that is really... Well, I frankly think all this language is very inaccurate from it, but it also said that as long as there's a rational basis for putting it in the supplies category, it goes in the supplies category, and it's not... Where does the administration of the program say that the claimant's classification of these fixed versus variable merely needs to satisfy a rational basis? You know, because this is... Well, in Policy 361, Version 5, and that's in the record at 30949.1985, and what it says is that the claims administrator will treat expense as variable or fixed if they fall within one of those categories on that Exhibit A to 4D. And if it does not fit in that category, then the claims administrator will use their discretion to apply the classification that best conforms to those classifications. Well, best conforms is a little different than rational basis. Well, in this case, the appeal panel made that factual determination that they found the rational basis and therefore best conformed. I mean, I don't know that those best conforms versus rational basis are terms of art. I mean, I never learned them in my accounting classes, so I don't know that those are necessarily terms of art. So you were an accountant also? I passed the exam, ma'am, I did. For you. Thank you. I quickly got sense and went to law school. Well, but, I mean, you know, normally bags, boxes, and so on would be... I mean, these things vary with the amount of shrimp, with the amount of input, and the amount of output of the company. I would agree. I would agree with the court. And I don't think there's any dispute about that, but based upon the baseball process, where it was all in or all out, the majority of those costs were found to be fixed costs, and that's where the claims administrator... I mean, the appeal panel in this case made his decision. How long did it... I know we look at the words of the agreement and all of that, but just as background, how long did BP negotiate this settlement agreement, if you know? I don't know the answer. That would be something probably better directed toward a steering committee member, and I was not a member of that. But I know it was months and months and months. Right. So here is what I think the court should look at when they're looking at why the appeals panel made the decision that they did. When they looked at this, they were going through the baseball process. You lose me on baseball process. Okay, that is so... I don't know what Texas Hold'em is, so tell me what the baseball process is. Okay, Texas Hold'em is when you bet everything you have. I understand that. Okay, this is very important. The baseball process, as they're going to the appeal, they make an initial proposal, and each of them tries to settle. And then they make a final... Each party makes a final proposal, and the appeal panel must choose either one of those proposals. All right, you've already told us that. So what is baseball? I don't know where they... It doesn't make sense to baseball. It's literally called in the settlement agreement, which is at .2484, it's literally called the baseball process. And what that does is, and with the limited ability to remand... We can remand. You can remand, but the appeal panel cannot remand. But they did, in fact, ask for a recalculation in this case. They asked for a calculation so they would know where BP's number was in comparison to where Texas Gulf's number. So when they went and asked for that calculation, then he looked at that, saw that it was similar to the calculation that Texas Gulf had, and used that to decide that was one of the two choices that he was going to choose. I'll take your word for it. So with the limited ability to remand, he made that choice to pick the one that was closest and best fit. And that is in Policy 361, Version 5. Texas Gulf urges that the court does not need to clarify what the policy is. The policy was negotiated. It was very clearly laid out. There's one, maybe two outlier appeal panels that I've been able to locate during my review of all these appeal panel decisions on supply expense. One is just wrong. But one outlier opinion should not compel the district court to exercise its discretion in this case. That doesn't create a split of panel. And BP's attempts now to remand this case, to split these expenses up, are misguided. For one, a review of their appeals, they never requested a remand. They went all in. And there were no new documents produced in appeal. And sufficient evidence existed to support the Texas Gulf. One, that they were contemporaneously listed on their P&Ls as fixed supply expense. Two, that they were on their tax returns as fixed supply. Three, they did not vary with revenue. And those amounts that we're talking about for the unloading process and packing of shrimp, those boxes and things, were only 31% in 2010 and 45% in 2009. And if the court doesn't have anything further, we would conclude by asking the court to respectfully affirm the district court's denial of discretionary review. Thank you, sir. All right. Mr. Jones, rebuttal. Thank you, Your Honor. You heard it straight from the claimant's counsel. He agreed with the court, with Judge Jones's statement, that the expenses that we are talking about today are variable. He agreed that they are variable. He described them as consumables. That should be the end of this case. Even if you don't feel comfortable making that accounting or economic judgment yourself, even if you don't feel comfortable taking my word for it, take his word for it, both sides agree. We are talking about a pot of expenses that are variable expenses. No one is here arguing that they are actually fixed expenses. And the question is, for purposes of calculating a claimant's compensation award under this settlement, should the PricewaterhouseCoopers accountants classify them as variable, which everyone agrees that they are, or should the accountants ignore that they are in fact in reality variable and classify them as fixed? I have two questions about that. One is that there is indication in here that, as he pointed out, something about cleaning supplies or welding, whatever that has to do with the business, could be part of the maintenance of the fixed equipment. So there was a discussion about what proportion of those would be the fixed. Yes, Your Honor, and I'm happy to tell that. According to Texas Gulf Seafood, and this is in their appeal briefs, it's in their submissions before the settlement program, 40% of the expenses in this category that was labeled supplies on their P&Ls, 40% of those expenses are variable. They are the bags, the boxes, the labels, the CO2. The other 60%, they say, are for other things, and we're not here disputing that those can be deemed... Oh, so what we're talking about is the whole universe of the so-called variable. I mean, the 40% is the variable. Correct, the 40% is the variable. And my second question is, what, if anything, does this baseball process have to do with what we're reviewing? I don't think that the baseball process needs to have anything to do with your resolution of this case. I will tell you what happened and why I don't think it makes any difference. The settlement program, in the end, there were sort of multiple layers of review. In the end, the settlement program deemed all of this category of expenses as variable. Up at the appeal panel, in the baseball process, BP made a baseball offer that just followed the settlement program's determination. Texas Gulf Seafood, they went all in. They made a baseball offer that was based on all of these expenses, 100% of the supplies category being fixed, even though we know that 40% of them are variable. The appeal panel agreed with Texas Gulf Seafood that 100% of these expenses should be deemed fixed, regardless of the fact that 40% of them are in fact variable. And so the appeal panel adopted Texas Gulf Seafood's baseball offer. If the correct 60-40 split had been used, BP's baseball offer would have been closer to the correct award calculation and should have been selected. And so for that reason alone, I don't think that the baseball offer as the back-and-forth below should have anything to do with it. I also don't think that that should interfere with this Court's resolution and statement on a critically important recurring issue in the administration of this settlement agreement. I guess the third question would be what is he asserted, and he had citations in it. Both briefs have citations about varying results by the appeals panels. So what are the decisions of appeals panels that favor BP? There are multiple that favor BP, and we've cited them in our briefs. They're 2016-13-59, 2013-18-68, 2015-4-19. Those are just three I have in my notes. There are more. They're all cited in our briefs in the section that describes the appeal panel split. BP asserts that this is a multimillion-dollar issue. It is a multimillion-dollar issue. The difference in this case alone for the classification of those expenses is more than a million dollars. This issue is recurring in multiple other appeals that are currently being briefed before this Court, additional appeals that are before Judge Barbier on discretionary review, yet additional cases beyond that that remain before the settlement program. This is a highly recurring issue worth millions of dollars. And, Your Honors, if I may, just my red light is on. May I finish? Very quickly. So we are not asking you to decide whether any particular expense is fixed or variable. We're not asking you to make any sort of accounting or economic judgment to classify expenses. All we are asking you to do, allow the PricewaterhouseCoopers expert accountants to make those judgments on their own, using their own expertise according to economic reality. Thank you. All right. Thank you.